May it please the court, my name is Jordan Tinsley. I represent the appellant Dewayne Jones. Mr. Jones comes before this court arguing that the lower court erred by denying his motion to suppress in this matter. The principal error committed by the lower court is an error of fact the events of this traffic stop but I think in fact that that's what the district court did. The district court made a finding that the arrest of Mr. Jones did not occur until after this firearm was recovered in a search and they had run his criminal history and determined that he was a felon. That factual finding which locates the arrest subsequent to the search is belied by the record. Every single officer that testified in this suppression hearing candidly admitted that Mr. Jones after he was removed from the vehicle for driving with a suspended license would not be allowed to return to the passenger compartment of that vehicle. Officer Kelly who was the principal officer conducting the traffic stop admitted that as soon as he heard from dispatch that Mr. Jones was driving on a suspended license that he made the decision to arrest Mr. Jones and he exited his patrol car with the intent to effectuate that arrest and was in the process of arresting Mr. Jones when the officers became concerned about Mr. Jones's alleged furtive movements. The fact finding error committed by the district court facilitated a legal error insofar as the court's decision to place the arrest subsequent to the search allowed the court to access an inapplicable exception to the warrantless search prohibition which is the exception found in Michigan versus Long and that's the exception actually applied in the two cases cited by the district court which are this court's decisions in Morgan and Sanford both of which are easily distinguished from the instant case because in both of those cases it was apparent that Mr. Morgan and Mr. Sanford would be allowed to return to the passenger compartment of that vehicle under appropriate circumstances which is a possibility that is absolutely utterly foreclosed in the instant case by the candid truthful honest testimony of the officers effectuating this traffic stop. What about the presence of the passenger from the car? Your honor, I think that's an astute observation. There certainly was a passenger that remained in the passenger compartment of the vehicle. Her name was Martha Knight. There is testimony from the suppression hearing that none of the officers regarded her as threatening. If they did, I assume that they would have taken some action to subdue her, restrain her, remove her from the passenger compartment of the vehicle. If there was a gun left under the seat, she would have access to it, would she not? Arguably she may, your honor, but she was not engaged in any kind of activity that suggested that she had any intent to access or that she posed a threat to those officers whatsoever. The idea of a protective sweep is to avoid getting to the situation where you have to respond to some kind of threatening behavior. Absolutely, your honor, but a protective sweep is only permitted if you find that this was a Terry stop and that the sweep was conducted as an extension of a Terry stop. This became an arrest and the moment at which this encounter between Mr. Jones and these officers became an arrest is really the heart of this whole case and our contention is is that you cannot say that that arrest happened after the search. If anything, the record supports a finding that the search was incident to the arrest and therefore the rule from Gantt must be applied and the rule from Long is inapplicable. You can't have a protective sweep after an arrest. That's essentially the search. I'm sorry, your honor, go ahead. But did officer Morris know that officer Kelly intended to arrest Jones at the time that he began the search? In fairness, I think that the record is silent as to that, your honor. I don't think that officer Morris was ever asked about that nor did he respond to any questions that give insight with regard to his knowledge. There's a lot of law enforcement concerns about creating some some line that is not bright enough by overruling Belton, etc. And obviously, officer safety is of paramount concern, not just to the court, but also to criminal defendants and citizens alike. And the need for a bright line is to some degree reasonable. In this case, all that officer Morris would have had to do is say, hey, Danny, hey, officer Kelly, what are we doing with this guy? OK, and then they could make a decision about which rule is applicable. And I realize that this to some degree was a dicey situation and that they're acting in the heat of the moment. But at the time that the search was conducted, the exigency was gone. It was totally evaporated. Mr. Jones was at the back of the truck with his hands on the rear of the truck. He was surrounded by three officers who are heavily armed. It was a fully controlled atmosphere at that time when officer Morris decided to search the truck. Now, the government would like to you to believe that this is some kind of limited intrusion because supposedly officer Morris only searched the location where he allegedly saw Mr. Jones's furtive gesture. But the the record actually belies that assertion as well, because it's clear that officer Morris observed Jones moving his hand under the seat, if that actually occurred. And then when he searched, he searched under the floor mat. So there's not an actual tie between the exigency that they say they observed and the search that was actually conducted. And the government overstates its case by trying to say that. I mean, these officers, to their credit, were honest about what happened in the course of this traffic stop. And based upon those honest admissions, this court has to conclude that the lower court applied the wrong rule. I see I'm into my rebuttal time. Unless there are further questions, I'd like to reserve that. Thank you, your honor. Thank you, Mr. Tinsley. Mr. McCree. May it please the court. I'm Cameron McCree and I represent the United States in this matter. As an initial matter, the government notes that Mr. Jones overreads the Gantt case in his regards to the holding regarding to Michigan v. Long. There, the Supreme Court noted that when an arrestee is secured, there's a certain law enforcement insurance that is diminished, but it completely evaporates if the defendant is the only person who's there. But the court also notes that there's a reasonable suspicion to believe that the situation is still not secure. The reasonable belief, excuse me, the law enforcement concern does not completely go away simply because there is an arrestee. The question about whether there's an arrest or a Terry stop is not the determinative factor here. Here, the determinative factor is, is there still a risk to law enforcement? As your honor pointed out, there is still the passenger who is there. There is this notion that she was not a threat, but the officers also noted that the gun itself was not a threat. It was a risk. And here the risk is, is that that passenger can obtain control over the gun and become a threat to the officers. The whole point of Michigan v. Long is to ensure that there's never a threat in the first place. In addition, Mr. Jones would have this court believe that there's not a limited intrusion, but the gun was found immediately after Officer Morris moved over to that side of the car, saw a bulge in the area where Mr. Jones's hands were moving. Granted, there was this notion about was the gun underneath the seat or was it under the mat? When Officer Morris came around the corner, he saw this bulge that was in the mat and all he did was lift the mat and saw the gun. That was a very limited intrusion. This is not a search of the entire car. It is not a search of everyone in the car. It is a very limited intrusion that is limited to the things that he sees when he comes around the corner after having seen this person tell him, I'm searching for my cell phone when the cell phone is already in his hands. And so in these circumstances, this is not the government that's being overly intrusive into someone's personal liberty. It's not someone who is going further than what's necessary to address a risk. It's someone who has a legitimate articulable concern about someone who's acting in a high crime area at almost midnight. It's around 1045 or 11 o'clock when all this is happening. The person just told him something that's untrue and this officer has a legitimate concern for his safety and the safety of others that are there. In regards to the rigidly parsing facts, I believe that the purpose in stating that is that in reading this as separate events that are happening at separate times, it misapprehends what really happened. Officer Kelly is on the radio with dispatch learning facts that, as Your Honor pointed out, Officer Morris didn't know. Officer Morris at that very same time is seeing Mr. Jones doing these furtive movements, giving him a false explanation, and Officer Morris immediately tells Officer Kelly, get him out of the car. We've got to deal with him because there's a situation that's developing. If we don't deal with it, something bad can happen. That's the essential of what he's telling him at that point in time. This is a very one point, this happened. Five minutes later, this happened. All this is happening at one time. The reason that matters is because the whole point of missioning and belonging is to ensure that officers can act in a swiftly moving situation. And here, Officer Morris knew that there was a person who potentially was dangerous to him, causing a risk that could potentially become a threat. In regards to the notion that every officer knew that Mr. Jones was not going to be returning to that car, again, it goes back to the fact that there seems to be no record that Officer Morris knew that Mr. Kelly had a suspended license, so he would have no reason to believe that he's not coming back to the car, much less that Officer Kelly had decided to arrest him. Even if he knew that, though, what's in Officer Kelly's mind is not what's determinative. It's what's communicated to Mr. Jones. None of that had been communicated yet. Under the objective view of the evidence, there's been no arrest at the time that Officer Kelly approached Mr. Jones. So there is no arrest, but even if there was an arrest, that wouldn't vitiate the applicability of mission and belonging. Your Honor, I believe our brief adequately sets out our view as to why there is reasonable suspicion here. If the Court has questions... Counsel, I do have a question on that. Is the government relying on collective knowledge on the part of the officers as part of its basis for reasonable suspicion? Yes, Your Honor, for one particular fact. Most of the facts are known to all the officers. The one fact that... There's no indication, is there, that the observation of the fidgeting and the statements of, I'm going to jail, there's no indication that that was communicated to the other officer, is there? That's correct, Your Honor. I believe it was Officer Hollister who observed that, and it was Officer Morris who did the search. But Officer Morris was also aware of the other events that gave rise to reasonable suspicion, which was the furtive movement that he himself saw. He knew what type of area that he was in, that there had been a lot of calls about particular conduct in that area. He also knew that this person is someone who's unknown to law enforcement. They may cut both ways, but in one way, you don't know who you're dealing with, which makes it a risky circumstance. You know, it's late at night, you don't know who you're dealing with, and the person is not telling you the truth. All those things together, even without the statements about, I'm going to jail, are reasonable suspicion, but that those statements simply add to the reasonableness of Officer Morris' concerns. And if the Court has no further questions, the government will rest on our briefs, and we would ask that this Court affirm the judgment of the District Court.  Thank you, Your Honor. Mr. Tinsley. So I think the Honorable Judge has picked up on something that I did, which is that the government wants to collectivize the knowledge of these law enforcement officers and the reasonable suspicion determination when it supposedly helps them, but they refuse to collectivize the knowledge of the officers when determining whether or not there was an arrest being effectuated at the time of the search. Well, they can't have it both ways. I mean, it's fundamentally unfair to say, yeah, we'll collectivize their knowledge and presume they have a hive mind for purposes of determining whether or not there was reasonable suspicion, but we're not going to say that they have a hive mind for determining whether or not Danny Kelly is arresting Mr. Jones at the time that Officer Morris undertakes the search at issue here. So I mean, they can't have it both ways. If they want to say we can have collectivized knowledge of these law enforcement officers for purposes of a reasonable suspicion determination, we should have to collectivize their knowledge for purposes of determining whether or not there was an arrest being effectuated. What was the individualized knowledge? Was it Morris who saw the furtive movement, the reaching down? Yes, Your Honor. The record supports the notion that Officer Morris alleges that he saw the reaching on the part of Mr. Jones and reacted to that His reaction to that was to ask Officer Kelly to remove him from the vehicle, which Officer Kelly was already going to do. Officer Kelly admitted as soon as he heard from dispatch, he was on his way to go arrest Mr. Jones, and that arrest was in process at the time that this search occurred. There was no risk to these officers once Mr. Jones was taken out of the passenger compartment and removed from the car, because they all knew, based upon their experience with suspended driver's licenses, that he's not going to go back to the passenger compartment of that vehicle. Were both passengers removed at the same time? They were not, Your Honor. And obviously, Ms. Knight remained in the vehicle after Mr. Jones was removed. But all of these officers honestly admitted that Ms. Knight was not threatening. They did not perceive her as a of the traffic stop. She was ultimately cited, or she wasn't even cited. She was just released from the location of the traffic stop with zero law enforcement consequences whatsoever. And this notion of the passenger was barely argued in the lower court because the testimony just does not support the belief that these officers perceived her as a person who may have access to weapons or any intent to use them. We expect our law enforcement officers to go into harm's way, and we expect them to do that in a manner where they maintain their composure, where they exercise restraint. We don't ask them to go into those situations and act a fool and do things willy-nilly. I mean, it's not asking too much, and it's not second-guessing these officers to ask them to say, once Mr. Jones is secured and the exigency has evaporated, to say, what do we do now? Are we putting this guy in the patrol car, in handcuffs, and taking him to the pokey, or are we going to let him back in the car? Is there any possibility that we're going to let him back in the car? If there is, then they can do a protective sweep. If there's not, then the Gantt rule applies. That is a bright line, and that's exactly what they were asking for when Belton was overruled. Go ahead, Your Honor. I'm sorry. Well, as the government says in its brief, you're trying to parse this too rigidly. And I'm sure you just made your other argument. To what extent are courts permitted to weigh the existence of a violation in light of the lack of egregiousness of the violation? It was not breaking into somebody's home at three in the morning, and to what extent does that factor, to what extent is the Supreme Court taking that into account? I don't believe they have, Your Honor. Has Gantt in any way been, have the sharp edges of Gantt been sort of removed over the years by the Supreme Court? I don't believe so, Your Honor. I mean, I think Gantt reacted to a loosening of Shymel that was recognized that Belton was unmooring that exception from Fourth Amendment guidelines, and effectively the Fourth Amendment itself was unraveling as a result of the interpretation of Shymel announced in Belton, and the court acted. Shymel, that was a California case. The outrageous decision, according to some prosecutors. Well, anyway, that's over, that's old. That was 1968 or 69, as I recall. Yes, Your Honor. And some of you were alive. And then the Belton decision was, I think, a couple decades after that, and then we had a couple decades of absolute confusion wherein, essentially, they were searching every passenger compartment, whether there was an arrest or not, and the court recognized in Gantt that that was an absolutely unconscionable erosion of Fourth Amendment, and we had effectively eviscerated the Fourth Amendment through that Belton decision, and they reacted accordingly in the Gantt decision to extend these limitations to searches incident to arrests. What this court would do by approving this search is allowing the district court to make an end run around Gantt by calling this search something that it wasn't. The district court calls this search a protective sweep. It's not a protective sweep. It's a search incident to arrest. And we are not the ones rigidly parsing these events. The district court did that. That's the error that we're arguing. The district court said, this guy wasn't arrested until after the search. It did that for the very reason that it allows the search to be salvaged under the long exception if it can separate that arrest from the search. But the fact is, and the case law going back decades supports this, if you have a search that is contemporaneous with an arrest, that is a search incident to arrest. I mean, that's what the cases say. Yes, your honor. Thank you very much. Thank you for a vigorous argument, and we also want to thank you for your willingness to serve under the Criminal Justice Act as appointing counsel on this as well. Yes, your honor. Ms. McCree, thank you also for your presence and argument today in the briefing which both of you have submitted. We'll take the case under advisement.